UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| CHERYL BACHMAN, | ) |
| Plaintiff, | ) NO. CV-06-140-2-JLQ |
| vs. | ) |
| FXC CORPORATION, | ) MEMORANDUM OPINION AND ORDER |
| | ) GRANTING DEFENDANT'S MOTION |
| Defendant. | ) FOR SUMMARY JUDGMENT INTER ALIA |

**Before the Court** is Defendant's Motion for Summary Judgment and Motion to Strike Affidavit of Todd Gerzine heard telephonically on March 6, 2007. Mathew C. Campbell appeared on behalf of Plaintiff. Kevin E. Dinius appeared on behalf of Defendant. Having reviewed the record, heard argument of counsel, and being fully advised in this matter, **It Is Hereby Ordered** that Defendant's Motion to Strike is **Denied in Part** and Motion for Summary Judgment is **Granted** for the following reasons.

INTRODUCTION

This action is brought by the Plaintiff Cheryl Bachman against the Defendant FXC Corporation. She alleges that the Defendant is strictly liable for the death of her husband, James Bachman, who died in a skydiving accident near Caldwell, Idaho on October 16, 2004. She alleges that FXC is strictly liable because the emergency Automatic Activation Device (AAD) manufactured by the Defendant FXC known as the Astra had an alleged defect and malfunctioned resulting in the death of Mr. Bachman.

**I. DEFENDANT'S MOTION TO STRIKE**

The Defendant has moved to strike the deposition testimony of Todd Gerzine, a Caldwell police officer who arrived on the scene after Mr. Bachman's death. Officer Gerzine testified at his deposition that he heard a conversation between Paul Janes, one of the owners of Skydown Skydiving School, and Lewis Sanders of the Federal Aviation

Opinion and Order Granting Defendant's
Motion for Summary Judgment –1

Authority, that "the green light was beeping, blinking, flashing and it should have gone off and opened the chute." When asked if that was the only conversation he had heard about what could have caused the parachute not to open, Gerzine answered "Right, other than I guess not pulling the chute, and I've never parachuted. I have no idea how it all works. . ." The court is satisfied that what Officer Gerzine stated he heard in this conversation cannot be used for the truth of the matter asserted in the alleged Janes-Sanders conversation, but the fact that such statements were made can be utilized for any other legitimate purpose such as impeachment, which is not now at issue herein. The Defendant's Motion To Strike is Granted in part and Denied in part as stated.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Because this is Defendant's Motion for Summary Judgment, the evidence and the inferences arising therefrom are viewed in the light most favorable to Ms. Bachman. The facts are undisputed except where otherwise stated. The Plaintiff has filed no affidavits controverting those submitted by the Defendant and the sole challenge to the facts set forth by the Defendant is found on page 1 of the Plaintiff's Response To Defendants' (sic) Statement Of Undisputed Facts (C.R. 55-3) as follows:

> Plaintiff disputes the following paragraphs in Defendant's Statement of Undisputed Facts: 20, 21, 22, 23, 24, 25, 28, 29, 30, 35, 36, 37, and 40. These facts are in dispute and therefore need to be litigated.

This statement by Plaintiff's attorney does not in any manner fulfill the requirements of Fed. R. Civ. P. 56(e), discussed *infra*. In addition, at her deposition, the Plaintiff stated that she knew of no evidence supporting the claim of an alleged defect in the Defendant's AAD.

### FACTUAL BACKGROUND

On October 16, 2004, James Bachman died after skydiving from an aircraft at an altitude of approximately 13,500 feet above ground level. He had safely completed approximately 25-35 such jumps prior to that date. At approximately 1:00 p.m. on October 16, 2004, Mr. Bachman's body was found near the intersection of Middleton Road and Ustick Road in Caldwell, Idaho. Neither the main parachute nor the auxiliary

Opinion and Order Granting Defendant's
Motion for Summary Judgment –2

parachute was deployed nor had the ripcords been pulled. At the time Mr. Bachman jumped, he was wearing a single harness, dual parachute system (main and reserve chutes).  The reserve (auxiliary) parachute was equipped with an Automatic Activation Device (AAD) named Astra (Astra) manufactured by the Defendant FXC Corporation and sold to Skydown Sport Skydiving School, Inc.  The Astra, as manufactured, is independent of the parachutes.  The owners and riggers and/or users of the main and auxiliary parachutes utilize and install the Astra device in the reserve parachute. As installed by the rigger, and if properly programmed by the skydiver, the Astra is designed to ignite a pyrotechnic cartridge and actuate a locking loop cutter to deploy the auxiliary parachute if an unsafe condition is detected by the Astra.  As set forth, *infra*, proper programming of the Astra at ground level is critical to its operation.

     The Astra AAD is a computer controlled altimeter type device that if properly programmed (calibrated), determines the rate of descent and the altitude above ground level of the skydiver and actuates a locking loop cutter to deploy the auxiliary chute if an unsafe condition is detected.  It is designed to automatically cut the reserve parachute locking loop if the unit's  activation altitude is reached, and the rate of descent exceeds 130 +-1-15 feet per second.  The Astra is a backup safety device, not designed to be the primary means to deploy the parachute system.

     Before each jump, the Astra must be calibrated at the ground level of the drop zone before the wearer enters the aircraft.  When the green light pulses slowly, the Astra is calibrating.  When the green light pulses quickly once  per second, the Astra is calibrated and will then arm itself after the aircraft reaches 1700 feet above ground level during its climb-out.  The Astra will not actuate regardless of the parachutists' rate of descent if the Astra is not properly calibrated at ground level.

     The Astra is designed to actuate at 1000 feet above ground level with a rate of descent of greater than 115 to 145 feet per second. It is designed to automatically cut the reserve parachute locking loop if the unit's activation altitude is reached, and the rate of descent exceeds 130+- 15 feet per second.  If the Astra is properly calibrated and armed, a

fall rate greater than (130+-1-10) feet per second will cause it to actuate when the Astra has descended to 1000 (+-100) feet above its calibrated ground level.  It will then fire a ballistic cutter through which the closing loop for the reserve parachute is routed, thereby cutting the reserve closing loop and releasing the reserve parachute. The Astra will not fire before reaching the preset altitude and will not fire if the parachutist is descending with a deployed main or auxiliary chute since such a descent does not involve the rate of descent necessary to fire the Astra.

All skydiving students are required by regulation to wear an AAD until they are licensed.  Mr. Bachman was close to being, but was not yet licensed.   James Bachman was properly trained on the use of the Astra, which was mounted on the front of the mud flap of his left shoulder harness on the parachute system.  On October 16, 2004, Mr. Paul Janes, one of the owners of Skydown Skydiving, who was extensively trained and qualified in the care and operation of the Astra, checked the Astra affixed to James Bachman at ground level and observed that it was in good programming condition.  He could not remember if he had turned the programming switch on for Mr. Bachman or if Mr. Bachman had done so himself.  Mr. Janes stated that Mr. Bachman was close enough to finishing his license that he was doing self-checks on his own equipment.    When the aircraft approached jump altitude at 13,500 feet above ground level, a fellow skydiver, Matt Belnap, observed the indicator light on the Astra affixed to James Bachman was blinking slowly.  At that time, Mr. Belnap had not yet been trained on how the Astra calibrated and did not know that the slow blinking light meant the Astra was in calibration mode, which was consistent with the Astra calibrating itself after having been improperly turned off and then on again at altitude.  The Astra is nearly impossible to be  turned off or on accidentally and it is  difficult, but possible, to do so intentionally.

Mr. Buchanan exited the aircraft while in flight at a jump altitude of 13,500 feet above ground level and did not deploy either his main parachute or his reserve parachute by hand.  The Astra did not fire and  cut loose his reserve parachute.  He made impact with the ground with both the main and reserve parachutes packed within their respective

containers.

Lewis Sanders, the Assistant Manager of the Flight Standard District Office for the Federal Aviation Administration was called to the scene of the accident to investigate the incident involving Mr. Bachman in order to ensure that federal regulations were complied with. He inspected the single harness, dual parachute system James Bachman was wearing and found nothing wrong with the main or reserve parachutes preventing deployment, but found that Mr. Bachman had failed to deploy either parachute. Mr. Sanders believed that Mr. Bachman had been conscious during the jump and when he hit the ground because his arms and legs were out in a free fall position, as opposed to evidence of a tumbling motion which would have indicated unconsciousness.

Mr. Sanders observed that the Astra affixed to Mr. Bachman was intact and was flashing. "It was on and off so many times which indicated to me from my recollection that the battery was good and the device was turned on." He also testified that the Astra was blinking slowly. He stated that he had "no reason, or no suspicions, nor any idea why the AAD would malfunction. "All three opening devices were not even attempted." *See Sanders' deposition.* On the other hand, Mr. Janes, of Skydown Skydiving, testified that "the Astra was still blinking, uh. . . uh, fast, which would have indicated that he had shut the thing off at altitude." *See deposition of Paul Janes.* Mr. Sander's observation of slow calibration flashing is consistent with the testimony of Mr. Belnap who observed the Astra flashing slowly shortly before Mr. Bachman jumped.

Because the AAD is not an FAA approved device, there were no FAA funds or labs at which to have it tested. Therefore, Mr. Sanders instructed Paul Janes of Skydown Skydiving to send the Astra to the manufacturer FXC Corp. for testing to see if there was any defect in the operation of the Astra even though

> "the thing had slammed into the ground, it was damaged, it hit the ground real hard. It would be no advantage to me if someone cheated and said yeah the thing worked even after it was damaged because it is self-responsibility, the parachutist himself has to set this thing in order to activate properly. Throughout the industry it is a little bit of a burr. But, it is almost common knowledge that some of these guys, when they are practicing for their ratings, they turn that darn thing off so it will not activate while they are in their

practice mode. They feel so confident they do not need it that they do not want it coming out when they do not expect it."

*Deposition of Sanders*

FXC tested the Astra extensively in-house on November 2, 2004, and it was found to be in good working condition. FXC then had the device thoroughly examined and utilized, including actual skydiving tests through the use of independent experts. The device worked properly as designed and no defects were found. Counsel for the plaintiff were notified of the proposed tests and afforded an opportunity to be present at and observe the testing. The Plaintiff elected not to participate. The first independent testing was conducted on September 30, 2005, and observed by Frank Mott, a Master Parachute Rigger and FAA Designated Examiner. Mr. Mott's affidavit and report (C.R. 52-8) concluded that the subject Astra had no mechanical/electrical problems or defects.

The second and actual jump-testing of the Astra was included in five parachute jumps by Michael L. H. Turoff utilizing the subject Astra on July 24, 2006, at Caldwell, Idaho. Mr. Turoff is an expert parachutist and skydiving instructor and examiner. Mr. Turoff concluded in his report and affidavit (C.R. 52-6) that the subject Astra worn by Mr. Bachman "operated exactly as the manufacturer specified it would in live jump scenarios." Mr. Turoff's 4th jump established that when the Astra was programmed and re-programmed during the climb-out, but within 1700 feet of the jump altitude, the Astra would not activate during the jump at any altitude or rate of descent. The Owners' Manual for the Astra attached to the Affidavit of John Perample (C.R. 52-5) at page 6 (FXC 0115) contains the following warning:

> CAUTION
> NEVER TURN THE ASTRA ON IN AN AIRCRAFT

Plaintiff has come forth with absolutely no test or evidence that the Astra contained a defect or malfunctioned, other than the fact that the Astra device was not activated. Plaintiff has not identified any specific or general design or manufacturing defect with the

Astra. Rather, Plaintiff relies on the deposition of Paul Janes who testified that he checked Mr. Bachman's gear before he boarded the aircraft and did not notice anything unusual. Mr. Janes also stated that he was working with another student on board for a tandem jump and did not see Mr. Bachman do anything unusual to his Astra. Mr. Janes noticed that the Astra was still blinking "fast" after Mr. Bachman crashed, which he believed indicated that he had shut the thing off and on again at altitude, although he did not see him do so.

Plaintiff also relies on the deposition of Denise Janes of Skydown Skydiving, an instructor who was on the fatal flight, who states she asked Mr. Bachman if he had turned his Astra on as he was boarding the airplane and that he responded "yes". However, Ms. Janes further testified that she did not look at Mr. Bachman's Astra right before he jumped.

## **Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. United States Dept. of Agric.,* 18 F.3d 1468,1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co. V. Fritz Company,* 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has carried its burden, the opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1975). Rather the opposing party must come forward with specific facts, direct or circumstantial, in this case, a

showing that the Astra was defective. *Id.* Fed. R. Civ. P. 56(e) provides in part as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations of denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In the matter, *sub judice*, the adverse party, the Plaintiff, has submitted no affidavits or other evidence showing that there is a genuine issue for trial. The Plaintiff has merely denied the matters set forth in the Defendant's Statement of Undisputed Facts. The oft-cited case of *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986) is instructive:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Id.*

The only evidence submitted in this case is that by the Defendant showing that the subject Astra device was not defective. This being a diversity jurisdiction case, the law of the state of Idaho applies. *Farmer v. International Harvester*, 97 Idaho 742, 553 P. 2d 1306, 1313, decided by the Supreme Court of Idaho in 1976 established that "it is also clear that the plaintiff will not carry his burden of proof by merely proving the fact of the occurrence of an accident."

## Release

Defendant points to a release agreement the decedent had allegedly signed with Skydown Skydiving wherein he assumed all risks associated with skydiving. Nothing in that document refers to the Defendant herein or its products. Even assuming one can legally and initially execute a document waiving all claims if an unknown defect in a product subsequently produces harm, which the court doubts, it is hornbook law that where a party is not named and included in a settlement or release, directly or indirectly, he is not bound or protected by it. There is a rebuttable presumption that an unnamed

party's release was not intended. *See Esterbrook v. State of Idaho,* 124 Idaho 680, 863 P.2d 349 (1993):

> *Tucker* and *Holve* stand for the proposition that a release must contain language which expressly or impliedly releases a joint tortfeasor, indicating that parties to the agreement intended to release the tortfeasor.

*Id.*

There has been absolutely nothing submitted to the court to indicate that the release Mr. Bachman signed with Skydown included FXC as an intended party to the release. Therefore Defendant's argument that Mr. Bachman released FXC from any liability for his death is without merit and rejected.

## Strict Liability

The depositions and affidavits filed in this case are clear that no one has found any defect in the Astra connected to Mr. Bachman's auxiliary parachute pack. Every test done on it has found absolutely no defect or malfunction. Granted these examinations have been conducted by Defendant's experts, but Plaintiff has provided no evidence, expert or otherwise, to the contrary. No one saw Mr. Bachman turn the Astra off and on again, despite testimony that his Astra was blinking slowly at jump altitude and was still blinking, either slowly or fast, after Mr. Bachman and the Astra had hit the ground at great velocity. The only disputed fact is whether the Astra was blinking slow or fast after the crash. The resolution of that fact in the Plaintiff's favor, that being that the Astra light was blinking quickly, would still not establish that the Astra was defective. Plaintiff's theory is that since the Astra did not deploy the auxiliary parachute during descent, the Astra must have been defective.

Both parties cite *Farmer v. International Harvestor Co., supra*, where the Idaho Supreme Court held that direct evidence of a defective product is the strongest evidence of its defective condition, but that a plaintiff will ordinarily have to rely on circumstantial evidence and inferences arising therefrom based on expert opinion testimony and the condition of the product after the accident. However, at 1311, the *Harvester* court held that a plaintiff need not prove a specific defect to carry his burden of proof. Rather a

prima facie case may be proved by direct or circumstantial evidence of malfunction and the absence of evidence of abnormal use and the absence of evidence of reasonably secondary causes which would eliminate the defendant's liability. *Id.*

Here, Plaintiff has come forth with no circumstantial evidence with inferences arising therefrom that the Astra was somehow defective. Plaintiff has provided no testimony, expert or otherwise, that the Astra was defective when it was sold to Skydown and no evidence that the Astra was in any way defective after the accident. In fact all the tests performed on the subject Astra indicated the contrary. The only disputed testimony is whether the Astra was blinking slowly or fast immediately following the crash. And, while there is no direct evidence that Mr. Buchanan turned off his Astra and turned it back on at altitude there is circumstantial evidence that this is not uncommon and it is not disputed that if this was the case the Astra would not have fired despite being free of defect or malfunction. There are simply no facts presented that point to a defect in the Astra causing it to fail to fire. *See Edwards v.Conchemco, Inc.,* 111 Idaho 851, 727 P.2d 1270 (1986), where the court held that a product defect may be inferred by circumstantial evidence, but that inference must be drawn from the underlying facts.

The Plaintiff's argument is that Mr. Bachman's Astra was checked and was turned on when he boarded the plane, that the plane was very crowded and it would have been very difficult for him to turn it off or back on and therefore must have malfunctioned causing his death. Such circumstances do no create an inference that the Astra was defective or that it malfunctioned, particularly in view of the very extensive tests after the accident.

As in all cases involving the loss of life, the court is concerned over the fact that Mr. Bachman lost his life while skydiving, and that for some unknown reason he did not deploy either his main or the reserve parachute. The reason that the Astra device did not fire and open the reserve parachute remains unexplained. Contrary to the *International Harvester* steering gear case where following the accident the pinions or studs of the lever shaft in the steering gear box were found to be broken, there is absolutely no evidence of a

defect in the Astra, which thereafter performed as designed.   There is no evidence, as Plaintiff suggests, but without evidentiary support, that Mr. Bachman may have been unconscious during the dive and therefore could not deploy the parachutes. The only opinion as to Mr. Bachman's consciousness or lack thereof, was that of  Mr. Sanders of the FAA who opined that due to Mr. Bachman's position, Mr. Bachman was conscious when he hit the ground. Even taking all inferences from the facts in the light most favorable to the Plaintiff, there are simply no facts presented from which a jury could infer that this tragedy was due to a fault with the Astra.    Therefore, Defendant's Motion for Summary Judgment must be and is **Granted.  IT IS SO ORDERED.**

   The Clerk is further directed to enter this Order, enter judgment dismissing the Complaint, the Amended Complaint, and the claims therein with prejudice,  forward copies to counsel, and close this file.

   **DATED** this 21st day of March, 2007.

                    s/ Justin L. Quackenbush
                    JUSTIN L. QUACKENBUSH
                    SENIOR UNITED STATES DISTRICT JUDGE